Now we'll hear the next case, 2012 ETHAN ALLEN GLOBAL v. United States Mr. Hanman, whenever you're ready. Thank you, Your Honor, and may it please the Court, Chris Hanman for Ethan Allen. Ethan Allen's case, I think, does begin and should end at the holding that this Court expressly adopted in Chase-Sydney, when it said that a producer who supports an investigation by filing a questionnaire response, but takes no other action probative of support or opposition, is a supporter under the statute. Ethan Allen checked the take-no-position box on both speakers. But the facts in Chase-Sydney were very different, and there was heavy reliance in the case and in the analysis that the panel made, the Court made, on reliance on the statement of support, the checking of support in the preliminary questionnaire. Your client did not do that right. There was never a questionnaire filed in which your client checked support, correct? That is correct. But to be clear, Your Honor said that there are a lot of factual differences. That's the only factual difference between Chase-Sydney and our case. They checked one box on the preliminary investigation. Well, the only facts that matter in that case at all, whichever way you're coming and going, are which boxes were checked and when. Absolutely. And that underscores that this case, you would be elevating to a level of statutory significance, checking the preliminary investigation support box, but all other actions being equal. Now, that finding cannot be based in the plain language of the statute. Certainly, the statute doesn't say anything about checking the initial investigation box as being supportive. Well, what you mean can be found in the plain language of the statute. The statute says expression of support through questionnaire response. They expressed support through questionnaire response. As did we, as this Court interpreted in Chase-Sydney. What this Court... Where was your expression of support? You checked no position. You're right. What we did, though, is we filed questionnaire responses. And what this Court held in Chase-Sydney was that the filing of the questionnaire responses is the support. You find that language at the holding itself, but it's not the only place, to get back to an earlier question Judge Prost said. Well, that's the case if we read that sentence to say no other action, that we don't consider checking the box to be action of support or opposition. And that's maybe a debate we need to have, but I don't think that's by any means slam-dunk answered by the language in the opinion. Oh, well, that's just one passage. And I want to be clear, it's not just that holding where it says, if you supply... If you do not respond in a particular way, but if you respond to questionnaires... In Chase-Sydney, not the one that begins we hold, but the next paragraph, we reject as unreasonable the ITC's interpretation of the quote support term in 1675 CD to mean the last indicated expression of support. Here's where they're addressing the preliminary versus later. For example, a producer's expression of support in response to the preliminary questionnaire is critical to the determination of whether to commence an investigation of an anti-dumping petition. So what they're stressing is it's really important that at some time, and actually if anywhere, more important in the preliminary one, that you check the support box. Why would Judge Reyna have all that in there if it wasn't critical? For this reason, that is responding to the ITC's argument in that particular case, that the one that matters is the final questionnaire response. Later on, he says, this is again in the same holding, when asked what would have happened if Chase-Sydney had not checked any box in the final questionnaire, ITC stated Chase-Sydney's status would depend on the surrounding circumstances. This is correct, because it is the surrounding circumstances, not abstract statements of support alone upon which an appropriate support determination depends. So you have to have the what he said. So you have to have the statement of support. That's how I interpret it. I don't believe that, because if you're going to say that, then you have to ignore many other passages in Judge Reyna's opinion as well. You'd have to ignore the passage at page 1380, where he says, quote, by its terms, the statute clearly defines supporters as persons who either submitted letters or responded to questionnaires. You'd have to ignore the sentence two sentences later that says, but the statute's plain language does not require that producers indicate an expression of support other than through a letter or by filing a response. It states that supporting producers are those who submit letters or responses. But you didn't do any of those things. Yeah, oh yes we did. We filed questionnaire responses. We filed very thorough questionnaire responses, precisely like Oakwood did. What we didn't do is check a particular box. But what the to be construed as lending the litigation support of answering those questions. It's lending the support to the ICT to conduct its investigation, relying on these on-and-offs. So what happens if you check oppose on both times? That, I think, would be a question. I agree with Ashley's counsel that under a shape-shifting it's simply irrelevant. But I think if you wanted to resolve our case on a narrow grounds, you could say that that would be, perhaps, probative of opposition, although I think it raises many constitutional problems. But in our case, if you look at the holding of shape-shifting, the question is, did you file responses? Well, when you say that you take no position, that's probative of support because you're not supporting. It's non-support. And it's also probative of opposition because it's non-opposition. No, I don't think so. I think the question is, is it probative of either? That's right. Why isn't it probative when you say no position? I think it ends up being probative of neither. Or to the extent it's probative of both, it cancels out. And so you're left with, essentially, the presumption that shape-shifting adopts, which is that if you file questionnaire responses, you have... Well, this sentence in shape-shifting, which I guess I'm not sure it follows what you were saying, it says, we are not persuaded. This is responding to ITC and the government. And it says, SKF does not address the proper results when, as here, a producer actively supports a petition by responding to questionnaires, but by checking a box expresses in one of its responses that it supports the petition, but in the other takes no position. Sure. They were clearly looking at a question of whether he said he supported it. Is that support negated or overcome by the statement of no position in the second questionnaire? No. That's clearly distinguishable from your case. Oh, it is distinguishable, but the question is, is that the holding the court was trying to establish? What the court was saying there was, look, the ITC is saying that SKF is binding, just as they tried to do here. They said SKF is so binding, this case can be dismissed summarily. What shape-shifting there is saying is, we're not persuaded. SKF didn't deal with this situation and went on to explain many ways in which SKF differed from shape-shifting, but it wasn't in that, in laying out many of those differences, purporting to establish a rule that would bind future cases. The rule, if you want to determine how to guide this interpretation, should be set or determined by where the court actually says, we hold. And where they said, we hold, makes no references to box checking. And we know that box checking is irrelevant because the court then goes on, another sentence that we can look at, at page 1382, where the court says that… You think box checking is totally irrelevant? So you're willing to argue the Ashley Furniture case as well? You think that if you check the box that said opposed, you should still get a distribution? I have the happy fortune of not having to argue that position here to prevail. Well, but you said box checking is irrelevant. It is. So I want to make sure you understand, and for a penny and for a pound, if you're going to go that way. Well, I do think that Mr. Russell made exactly the right argument under Shea Sidney that box checking is irrelevant. It does raise grave constitutional problems because you end up, at the end of the day, relying exclusively on what that box has checked. But you don't, of course, have to reach that question here. But don't you make it harder? If we were to find for you, but not for your friend, it makes the constitutional question much more difficult, does it not? Because the distinction then is not between someone who supports the petition, which language appears all over the statute, but rather the distinction between doing nothing or checking the oppose button. Doesn't that present a more convoluted, complicated, and difficult constitutional issue with respect to upholding the statute? Which is why I think the proper way to resolve the statute— Is the answer yes? I actually don't. I think it makes it more administratively difficult, perhaps, for the ITC, but I don't think it necessarily raises any difficult and little questions. I think in our case, it's a simple matter of applying the literal language of Shea Sidney and saying, did you file a question and response? Yes. Did you then do anything else that was probative or supportive? Aren't you making the same kind of argument that your colleague was making about it being held in distinction with Oakwood? Yes. If you're denied the relief here, you're denied over somebody who, like Shea Sidney, expressed their view exercising their First Amendment right differently than you. There's no question about that, which underscores, I think, the absurdity of the ITC's position in light of FKF and Shea Sidney. At the end of the day, the only difference between getting money and not getting money comes down to whether you checked a particular box. You put a lot on extracted sentences from Shea Sidney. It's almost like for every one you give me that appears to clearly favor you, there are at least one other one in there that may not. It's difficult for me to read it exactly the way you want me to, but it's almost equally difficult to read it exactly the way the government wants me to. Let me just go to the application of what you all keep talking about as the critical quotes which represent the holding to the facts of Shea Sidney, where Judge Reyna, in the very last paragraph, applies it, really, for the first time. When he says it, this is where I had started with you before. This is correct because it's the surrounding circumstances, not abstract statements of support alone, upon which an appropriate support determination depends. I stressed alone as, look, abstract statements of support must be included. You said, no, they don't. I understand that's your position, but then he goes on. One such important circumstance is whether producers participated in the investigation by providing supporting information or arguments and questionnaire responses. We did that. Well, I don't know if you provided supporting information and arguments, given that you didn't take any position, but even if I grant you that you did, let's keep going. Here, Shea Sidney provided sales and production and other data to the ITC in both phases. Did you do that? Yes, we did. Let's keep going. It also expressed abstract support in the preliminary response and took no position in the final response. Did you do that? Not with the first, but with the first and the second. You didn't do that. Here's my favorite part. Significantly, comma. Significantly. This is his application of the law of the facts in this case. Significantly, Shea Sidney did not fail to file responses to the questionnaires. It did not engage in activity in opposition to the petition, and it never expressed that it opposed the petition. Exactly. We might meet every one of those conditions. Yeah, but the problem is, you say that you would like to have the broad reading that includes both take no position and oppose. You were willing to stand here a minute ago and defend the Ashley Furniture case as well, because you said checking the box doesn't matter under Shea Sidney. Well, Judge Reyna said significantly, Shea Sidney never expressed that it opposed the petition. So at a minimum, aren't you willing to give up on his case and just stick with yours? I'm sure my client would be happy with that position, but the point is... But you're going to continue to tell me that Shea Sidney stands for the proposition that even if you expressed opposition to the petition, you get benefit. I am willing to tell you that on the facts of our case, we can prevail, and we can prevail on these narrow grounds. The court doesn't need to reach that question. You begin by applying the whole... You've got to reach it in the other case, and you open the door, so answer the question. If, are you telling me Shea Sidney stands for the proposition that if you check the box that says oppose, you get benefit, anyway, as long as you filled out the questionnaire response? I think that it ultimately comes down to this question. Does checking, if checking the box... Is it yes or no? Are you telling me Shea Sidney stands for the proposition that if you check the box oppose and fill out a questionnaire response, you get benefit? I think that it can be read that way, but I don't think for us to prevail, Judge Moore, you need to read it that way, because the way we can prevail on narrow ground is simply this. You begin with the holding. Did you file questionnaire responses? Yes, we did. Then did you do anything else that was probative of support or opposition? Now, the question that, Judge Moore, you're asking is, could a box checking be probative of support or opposition? What Judge Reyna was perhaps suggesting was checking the support box was something probative of support. That's fine. What we did was take no position. That's neither probative of support nor of opposition. Therefore, we check off every single metric that, Judge Moore, you picked off significantly. We didn't fail to file those responses of the questionnaires. We didn't engage in activity in opposition, and we never expressed opposition to the petition. Do you have a position on if we were to strike down the statute, what would remain in terms of observability? Yes. I think that perhaps the best way to start would be with Judge Lin's dissent in SKF. He identified how he would have severed the statute, and his point was that the statute should be severed in a way that essentially leaves all those who respond to the questionnaires as supporters, so that you do away with having to rely on the abstract expression. That does get back to the final point. Ultimately, we know from Shea Sidney that you cannot either reward or penalize, and that's a key point. You can't penalize on abstract expressions alone, but at the end of the day, the government's position is essentially that, because in every single case in which someone says, take no position. Your idea about what's left, suppose the statute said persons who indicate affirmative support by checking the box. If I eliminate who indicate affirmative support by checking the box as unconstitutional, then all persons share in the reward? No. I think the court would have to say that's a different statute, and I think you have to take it in context. This is a different statute of provision, a different context. Clearly, 1675 CD refers to a different discrete entity. Okay. Why don't we hear from the government? You have reserved four minutes for rebuttal, and we'll restore that time. I have a feeling, in experience as a guide, the other side will make up for it. Mr. White. I please the court again, Your Honors. The court should affirm the CIT's decision in the Ethan Allen case as well as the Ashley case. Both Ethan Allen and an Ashley that we were talking about are equal in one respect. Neither party had ever checked the box indicating that they supported the petition in either the preliminary or final phases of the ITC But, Chase, this is a little harder for you in the second case, right? Because they talk about expressing, they exclude the group expressing or taking action in opposition. They don't really exclude the group that takes no position. Well, yes, Your Honor, but the court does explain, as I think both you and Judge Moore have been referring, to the voluminous language that specifies, or that's viewed as significant, the fact that there was a checkbox in the preliminary. Now, do you have a position on if they, hypothetically, if the statute is struck down, what we're left with? Well, we haven't briefed it, and so I don't want to speak out of school too much, but one argument would be that the statute, if it's been conceived as a reward for parties that were seeking relief that Congress felt should be rewarded, I'm struggling with the idea that it should be severed in such a manner to expand the In other words, your view is that it should be left to the petitioners? Or it should go to the taxpayers? Well, I mean, I don't know what the alternatives are. Well, the court would probably be trying to save the statute to whatever extent was consistent with the congressional purpose that was identified, and the congressional purpose that was identified was to support those parties that were seeking this relief by giving them a reward. The court struggled with whether or not, in SKF, the court struggled with whether or not the statute was overbroad because of providing... Go ahead. Could we rationally hold that Ethan Allen qualifies for ADP, but actually does not? And if we could, what would be the rationale? There's no reasonable way. I do agree with the suggestions from the court that that would raise some constitutional questions. But the more important point is that it's just... I just want to stick with this for a minute. So let's assume we decide that there really is not clear daylight between Shea Sidney and Ethan Allen, that Ethan Allen qualifies. Then I hear you to say we have to decide also that Ashley qualifies? Well, no, because the way that... That was the purpose of the question. Excuse me? That was the purpose of my question. See what daylight... How do you put daylight between reversal and Ethan Allen and affirmance and Ashley? Well, again, the way that the Shea Sidney decision reads, you can read the decision as requiring specifically that the party had, at least in one instance, check the box. But let's say the court doesn't go with that reading and says that a party that never checked the box but didn't otherwise oppose by checking a box is eligible. That would create some distinction between Ethan Allen and Ashley. But as we've submitted in the briefing, that's not... My point is we would be distinguishing between two parties that express a different point of view on whether or not the investigation ought to go forward. It's because they had a different view, although they both cooperated fully and exactly in the same manner once the decision had been made to go forward. I'm referring to the argument being made that somebody checked, no, I oppose because I think it's a dumb thing for the government to do because we're really going to get killed by some other action by some foreign government. What's going to happen to us? But if you disagree with me on the politics of it all and go forward, I'll sure help you. Again, as a... You're punishing from an expression of speech as to whether it's a good idea to have the investigation. For one, it's not a punishment of any sort. Of course, Congress was attempting... Giving money to one guy and not to the other. They were rewarding a party that was in a litigation-like context providing support for a petition that was going to provide a remedy for unfair trade practices. The court dealt with all of that in SKF and although the suggestion is, well, if you turn some of this on a box-checking exercise, you're raising a constitutional concern. Well, that constitutional concern was addressed and it was resolved by the court in favor of saying it's not unconstitutional. Congress can lawfully do this, did decide to provide this reward to those parties that supported and those parties that were petitioners. There is a rational analogy to litigation... How do you reconcile that with Judge Reyna's holding? We hold that when a US producer assists investigation by responding to questionnaire responses or by responding to questionnaires but takes no other action provative of support or opposition, the producer has supported the petition under 1675C and is eligible for distribution. So all you have to do, according to Judge Reyna, is respond to questionnaires and take no other action provative of support or opposition. Isn't that exactly the situation they're in? Why? If you have taken no position, you are essentially... I agree with you but I'm stuck with precedent. I'm saying how do I... I mean, I can't give you what I want to give you. I can't give you what you ask for because I'm bound by Judge Reyna's precedent. So what do I do with this sentence? He holds. All you do is fill out a questionnaire response and take no action provative of support or opposition. You get money. It's as clear as day, that holding. So what do I do? Assuming... I mean, again, the court's already discussed all the other language in the Shea-Sidney decision. It's inconsistent with reading it in that way. But even focusing like a laser on that particular language, as we had addressed in the briefs, and this is also an issue that came up in Shea-Sidney, it gets back to that question again of whether or not there really is three positions. In a way, there's really two positions. You either supported it or you didn't. And so by taking no position... I agree. You got me, hook, line, and sinker. But the second questionnaire response in Shea-Sidney, which is a no position questionnaire response, was combined with the fact that the party had supported it in the first time around. And so on your theory, then, they were just diametrically opposed. Because if the no position equals opposition, then Shea-Sidney, someone started out and says, I support. And then they say, I oppose. Are you telling me the result would have been the same in Shea-Sidney? The court was pointing to the importance of... And again, I see my time has run out and I'm going over, Your Honor, so I'm sorry. But the court was pointing to the fact that it was important that in the preliminary phase, the party had supported. Where the party had, in the second time around, not taken any position to kind of... A direct opposition would be seen as stepping away from your prior support. But in both SKF and in Shea-Sidney, the focus is on real activity. What are you really doing in the real world? Are you really helping? Because when you do the questionnaire, you give all this useful information. So someone who, just before the investigation started cranking up, comes in and says, I'm opposed, sends a signal to all these other people if they let it be published, right? So that can have an effect on what's happening in the proceedings. I don't think it was just discount. I would think that if you're right, that no position equals opposing, then Shea-Sidney is wrongly decided, wasn't it? Well, again, the way that the court appeared to reconcile all of that was to rely on the In that context, in those unique facts where the party did check the support box the first time, but then took no position, it might be that there you would say you wouldn't want to treat the no position position as essentially a withdrawal of support. And that's what Shea-Sidney actually said, responding to stating what the government and the ITC's position was there, citing SKF in terms of neutrality. And it responded, this is different because this guy responded by checking the box. Correct. So in Shea-Sidney, it very well may be that you're going to look at that second questionnaire response that says, takes no position, as not indicative of opposition because of the unique facts involved. But in a case like Ethan Allen, where there is no support, there was never any checking of the box for support in the preliminary, that there they are really in line with parties that don't support. And in that instance, those cases can be reconciled. Thank you. May I please, the court, like to start by emphasizing the opposing counsel was not willing to back away from Ashley's position. And the reason for that is that he recognizes that the Shea-Sidney ship is still permanently in the harbor. The reason why it's in the harbor is because what Shea-Sidney is recognizing is that... You might better tell Judge Rainer that. No, no, I would be happy to do that. And the reason is because what he has said is it's probative of support or opposition. When a party has already indicated its support and then takes no position in an unsigned form, which is what happened in Shea-Sidney, that is not probative of anything. But when a party does not take... by responding to questionnaires that take no other action, probative of support or opposition, the producer has supported the petition. He didn't say if they first support and then later take no other action. But Your Honor, he recognizes that three other places in opinion that the action that is probative of opposition is checking the opposed box. And what I'm saying to you... And they didn't do that. Your Honor, just like if I was in a court... They didn't do it. But Your Honor, they did in the sense of what I'm saying is as a legal matter, the effect of standing up and objecting in court versus saying nothing versus saying that you're fine with what the courts are doing, the objection is different than those other two, which is... Wait. Do you think that standing by and doing nothing is the same thing as acting? In this context, absolutely, Your Honor, because when the commission... Really? Because Judge Reyna seems to be pretty darn clear about probative of support or opposition. Because Your Honor, in that context, he's looking at a situation where the party has already indicated its support. It's already in a support. And then what he's addressing... Judge Proch, you read this language specifically. What he's addressing is the unique factual situation where a party is within the statute. And then the question is, does it get disqualified by the statute by doing nothing? So has their vote already counted in terms of what they did and take Stanley for all of the calculations he's doing? In the preliminary questionnaire, it is. And that's why he focuses... What does his sentence mean? Why should further action probative of support count against you? The way he's got this sentence written, he says, if you answered your questionnaire, you take no interaction probative of support. Then you will support. But what happens if you take a lot of action probative of support? He says you're not supposed to do that. Right. Your Honor, I mean, there's different ways of reading that as to whether additional support could be weighed in. But I think what he's doing there is invoking SKF. And the point that what's going on in SKF is SKF has set forth a test and says that as long as you've indicated support and you answer the questionnaire, nothing else is required. But, you know, it'd be helpful to read SKF again because this is a critical passage. And you realize in application in Shea Sidney of all of the law that he espouses in the paragraph that applies it, they comply with every single fact that he says exists in that case. He doesn't focus on the fact... Never does he focus on the fact that they had first checked the box that said support. The whole thing in application, that whole paragraph, every detail of it is about they indicated support and they never expressed opposition. Exactly, Your Honor. And the reason is, is because in Shea Sidney, he's addressing a situation that is covered by the statute because they supported the petition. He never says that. Where does he say that? He doesn't say it, but that's not my point. Your Honor, the point is, is that in the context of the case, and also he also specifically says that he's not going back to SKF. Remember what they said in SKF. At best, the role of parties... Where were you talking about? I'm sorry. This is on 1359 in SKF. It's the last paragraph before 1360. At best, the role of parties opposing or not supporting the petition and responding... Where were we? I'm sorry, Your Honor. 1369? 1359. 59? The last paragraph before 1360. Right after footnote 37 on my printout, if that helps. At best, the role of parties opposing or not supporting the petition and responding to who must reluctantly respond to interrogatories or other discovery. There's no such suggestion that such parties must be favored by an award of attorney's fees or other compensation similar to that given to prevailing plaintiffs who successfully enforce government policy. It was thus rationale for Congress to conclude that those who did not support the petition should not be rewarded. And Judge Reyna says you haven't supported the petition if you didn't file questionnaire responses. So all of this is caveated with the subsequent precedent that we're also bound by that if you oppose, Congress doesn't have to give you money, but Judge Reyna says you support if you simply file questionnaire responses. Nothing else. Respectfully, no. What Judge Reyna says is that he says that other action probative of support or opposition, and what I'm submitting to the court, is that in this particular context of this administrative proceeding, a party that takes no position, both the first questionnaire and the second questionnaire, is taking action that's probative of opposition because in this administrative proceeding, as everybody knows, that counts as opposition. Unlike Shade Sidney, where taking first support and then not doing anything actually counted for the preliminary questionnaire as support. And this is a key distinction. And so the reason why we can reconcile Shade Sidney is that Shade Sidney did not address this fact, and it made a specific point that you want to take a look at whether action is probative or not. And our point is just like in other litigation contexts. Why don't you wind up? I'm sorry. Words have meaning. In this context, they also have meaning, which means that it is litigation-related conduct. It is not abstract expression. Thank you for the floor. Appreciate it. OK, Mr. Gallagher. Good afternoon once again, Your Honor. One last whack at this. With respect to box checking being irrelevant, of course it isn't irrelevant. That was the whole purpose of the exercise in SKF. That's what the court addressed when it was addressing the petition support provision, whether it expressed support or not, in a questionnaire response. The questionnaire response contains that very specific question, do you support or do you oppose, what is your answer? Both preliminary and final questionnaire responses contain those. The appellant's argument that Shade Sidney stands for is some sort of actions test only. That's what we had in both SKF and Shade Sidney below. The court struck the language and imposed a participatory test. This court said, no, that's wrong, because the statutory requirement for an expression of support is constitutional, with the caveat that there had to be further active participation in the proceeding. There's no question about that. There's no question about that in SKF. There's no question that SKF was applied by Judge Rania in the end, when he made the distinction between the prelim and the final, and emphasized, spent a great deal of time discussing the prelim, how important it was and why the expression contained in that prelim, the support, was more important than the final. Judge Rania said the commission improperly weighed the evidence in that case, that we should have relied more on the prelim, not on the final. Where did he say that? The improper weighing, Your Honor. Where did he say they should have relied on the preliminary one, not the final one? Well, his ultimate decision was that the preliminary contained the statement of support, and that that was what he used as part of his decision. Where? Where? Show me where he did that. 1382, Your Honor. We reject as unreasonable the IPC's interpretation of support, and to me, the last indicated expression of support. For example. Is that the same thing as saying, we adopt only what you say the first time around? The very next sentence, Your Honor. For example, a producer's expression of support in the response to the preliminary questionnaire is crucial to determinations with respect to the anti-dumping position. Then Judge Rania goes on later to rely on that specific thing, that laundry list you went through. That was one of the things he relied on. Nowhere in the laundry list do I see the fact that they initially indicated support. Where? It also expressed the abstract support in his preliminary response and took no position in the final response. Wait, where are you reading from? I'm sorry, Your Honor. That's at 1383. What happens if in response to the initial questionnaire, you don't get the 50% requirement? Because none of that. There's no. I'm just saying. But then your final questionnaires come in, and whoops, you make it. Because some people change their mind. They went from no position to support. Now, does that mean that a proceeding goes forward? We're talking about, you're talking about two slightly different things, Your Honor. In the initiation phase is when the 50% threshold has to be met. In the preliminary phase where the department or the commission receives its preliminary questionnaire where that question is asked again, they're contemporaneous. They're all within the very first 20 days. That's why I'm testing whether, perhaps it's irrelevant, whether or not we were right in concluding that the last indication is irrelevant. Because what happens if you didn't make your numbers the first time around, but you did in the second? The commission considers the final questionnaire, and this is where we disagreed from perspective. We consider the final questionnaire and the information contained therein, just like we did in the preliminary questionnaire. It's true that if the commission makes a negative injury finding in the preliminary questionnaire, or preliminary phase, then the investigation will stop. But that's true with the final phase, too. If the commission doesn't find injury in the final phase, there will be no order. No duties. So for the commission's purposes, and that's what we argued in Shaysini, the preliminary determination was no different, substantively, in that sense than the final determination. The court believed differently. And that's what it based its decision on, how the prelim was so much more important than the final. OK. I think we have one more quick thought. You had a pleasant afternoon. Thank you very much. Thank you very much, Your Honor. And I'll sit down. So we gave you back four minutes. We'll add one to keep it even with how the other side did, Mr. Hampton. Five minutes, if you need. Thank you, Your Honor. I think the argument this afternoon has confirmed that the key question is, how does this panel resolve Ethan Allen's case in light of Shaysini? The government would have you rule against Shaysini, but doing so in a way that would require you to X out the holding that Judge Reyna provided expressly. It would also have you X out of the opinion the sentence that says, the statute's plain language does not require that producers indicate an expression of support other than through a letter or by filing a response. It states that supporting producers are those who submit letters of responses. The government would also have you X out of the opinion the sentences that say that you can't penalize or reward based on abstract expression. Other than by filing a response. The response that's filed in response to the questionnaire has got the questions in it, right? It has, yeah. So why shouldn't I view filing a response to the questionnaire as saying you're supposed to answer all the questions? I suppose if you don't check the box, your answer is incomplete, right? Sure, but we answered all the questions. We answered not only the box checking question. We answered the many, many pages of detailed financial information on which, by the way. And so your argument essentially is that if the agency wants to use the way that boxes were checked to decide whether to proceed with an investigation is okay with you, but that it's irrelevant for purposes of deciding who's an ADP after you've had an investigation in which countermeasure duty is issued. That is absolutely correct. And that is consistent with Shea sitting and gets to the point I was making at the outset of this rebuttal. To rule in our favor doesn't require doing violence to the opinion. It requires you to harmonize the various sentences we've discussed today. And the way you do so is you apply the ruling and you recognize that when the court, in the few instances, emphasized that Shea Sidney had preliminarily registered his support, that that was consistent with the panel's decision that is there evidence that's probative of support or opposition? Checking that box happened to be probative of support and Judge Rain emphasized it. But in the paragraph that Judge Moore emphasized that significantly factors, each of those factors maps onto Ethan Allen's conduct precisely. No, each one doesn't in that paragraph because the paragraph also says, as he rightly pointed out and I had overlooked in my deal, the fact that he relies upon the expressed abstract support and the preliminary response. Yes. And so I was referring to the final sentence there, the significantly sentence that you and I talked about earlier. Each of those factors, the three he identifies under the significantly. Yes, but the one he identifies right before that doesn't. Yes, and that actually raises a very key point that I think my friends on the other side have underscored. He is referring to one important circumstance. And the key there is, as Judge Rain and the panel emphasized, the surrounding circumstances. The government's position would do away with any inquiry in the surrounding circumstances because the only circumstance that would ever matter, that would truly have dispositive significance, and in fact, the government says dispositive significance at page 40 of their brief, is did you check a box? No other surrounding circumstance matters once you say, Ethan Allen, I checked, do not support. That also is, again, doing violence to the shade sitting decision because you aren't looking at surrounding circumstances. You're myopically focusing on just one. I thought you told us we look at one thing and that's the questionnaire. And if you saw the questionnaire, you're home free. How's that looking at surrounding circumstances? Because what Judge Raina has said is that that is what the statute, the clear language of the statute requires. And then to determine whether there's in fact any other factors, that's when you look at the surrounding circumstances. And that he needed to say that, and the panel needed to do that, to reconcile SKF because of course in SKF. Isn't your point made by the concession by the ITC that if SKF had marked support, I support the petition both sides, but nonetheless came in and opposed, they would have given them status? Yes, and I think it's also, I think we win also in the fact that the ITC recognized that there's really no difference between the initial investigation and the final investigation. And it's important to emphasize that. The final investigation after is just as important as that initial questionnaire. If the ITC doesn't issue a final ruling, then there are no distributions to be had. And so to suggest that Shea-Sydney's taking no position there can be ignored because it answered yes on initial, can't be harmonized with the statute itself. There's no basis for the statutory text, and it certainly doesn't... Yeah, we said it, right? We said it in Shea-Sydney. Yes. What you said the second time around is irrelevant. And the key point in Shea-Sydney is, did you submit a questionnaire response? That was held to be true as a matter of statutory interpretation. And that was held to be the only factor that mattered there. And I would just, if I could conclude, because I know it's been... We sent it, just because we've been trying to keep the time even, so I'd appreciate your drawing down, huh? I will just, and I would just conclude on this one final point, because I think there's been some confusion. The 25% rule that has occupied some of the conversation today, that has nothing to do with the ITC questionnaire. That has to do with a separate commerce questionnaire. There's some confusion, because the statute that talks about that 25% refers to the administering authority. The administering authority is defined in Section 1677, Paragraph 1, as the Department of Commerce. The questionnaire that we are talking about here, the only relevance of that goes to, is there a material injury? And that's common at both the initial and the final stages. We thank both sides. The cases are both submitted. Thank you. That concludes our proceedings for today.